UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PARFUMS DE COEUR LTD,  :
    Plaintiff,  :
      :
v.  :          3:18-cv-00749-WWE
      :
CONOPCO INC.,  :
    Defendant.  :

## **MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

In 1993, Parfums De Coeur LTD ("PDC") purchased from Conopco the business operations related to certain lines of fragrance and cosmetic products. Among the product lines PDC purchased were talcum powder products, which have been the subject of product liability suits asserting personal injury claims allegedly caused by asbestos contained in the powder.

The instant case involves a dispute over liability for certain asbestos claims pursuant to the parties' 1993 Asset Purchase Agreement. PDC alleges that Conopco, as seller, retained liability for and is required to indemnify PDC from such asbestos claims. Conopco has moved to dismiss the majority of PDC's claims, arguing that PDC, as buyer, expressly assumed all liability for the claims.

## **DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon

which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Assumption of Liability**

At the outset, PDC concedes that it assumed certain liabilities for product liability relating to the fragrance products produced by Conopco prior to the closing of the Asset Purchase, but only does so for "claims accruing and products sold after said closing." The final Asset Purchase Agreement defined the Closing Date as September 10, 1993, and the Inventory Closing Date as November 1, 1993.

The Asset Purchase Agreement provides in relevant part:

1.3 Assumption of Certain Liabilities. At the Closing, Buyer shall assume and thereafter pay, perform and discharge when due, and indemnify and hold Seller harmless against, each and every of the Assumed Liabilities. The term "Assumed Liabilities" means

* * *

(c) all liabilities and obligations for breach of warranty or product liability claims, the first written notice of which is received by the Seller or the Buyer at least 18 months after the Closing Date, relating to products of the Business produced by the Seller prior to the Inventory Closing Date (including but not limited to any products of the Business or components thereof included in the Assets).

1.4 Non-Assumption of Certain Liabilities. The Buyer is not assuming, and shall not be deemed to have assumed, any liabilities or obligations of the Seller or of any kind or nature whatsoever, except as expressly provided above in section 1.3 hereof. Without limiting the generality of the foregoing, it is hereby agreed that the Buyer is not assuming any liability and shall not have any obligation for or with respect to:

(i) any liabilities of the Seller or its affiliates relating to the Assets or the Business that are incurred prior to, or otherwise arise out of or

2

relate to the period prior to, the Closing Date, or with respect to the Inventory Sales Liabilities, the Inventory Closing Date (or November 12, 1993, as herein otherwise provided) (except as expressly provided in Section 1.3 hereof);

* * *

(v) except as expressly provided in Section 1.3, any liability or obligation of the Seller or its affiliates arising out of any action, suit, investigation or proceeding to the extent based upon an event occurring or a claim arising (A) prior to the Closing Date (or prior to the Inventory Closing Date [or November 12, 1993, as herein otherwise provided] in respect of sales by Seller pursuant to Section 5.8(a)) or (B) after the Closing Date (or the Inventory Closing Date, as the case may be) in the case of claims in respect of products or services sold or provided by the Seller prior to the Closing Date (or the Inventory Closing Date [or November 12, 1993, as herein otherwise provided], as the case may be) and attributable to acts performed or omitted by the Seller or its affiliates prior to the Closing Date (or the Inventory Closing Date [or November 12, 1993, as herein otherwise provided], as the case may be);

PDC argues that Section 1.4 of the Asset Purchase Agreement and Section 3 of the Assumption Agreement specifically disclaim its liability related to products sold by Conopco prior to the Closing dates.[1] PDC maintains that it has assumed liability only for products sold after the Closing Dates. Nevertheless, Section 1.3 is an exception to PDC's non-assumption of liabilities described in Section 1.4. Therefore, Conopco argues that, to the extent Section 1.3 contradicts Section 1.4, Section 1.3's carve-out for Assumed Liabilities must prevail.

PDC responds that no language in Section 1.3(c) *expressly* obligates PDC to assume liability for products sold before the Closing Dates, namely because Section 1.3(c) does not contain the modifier "sold before the Closing Dates." Notwithstanding, the bundle of "products sold before the Closing Dates" is a subset of products acquired

---

[1] The language of the Assumption Agreement mirrors that of the Asset Purchase Agreement.

by PDC with the potential for ensuing product liability claims. The Agreement's protection that Assumed Liabilities must be expressly provided does not constrain the breadth of those exceptions clearly stated in Section 1.3. Here, "Assumed Liabilities" include all liabilities for breach of warranty or product liability claims related to products produced by Conopco prior to the Inventory Closing Date, the first written notice of which is received at least 18 months after the Closing Date. The parties do not dispute that the asbestos claims at issue in this case meet all these requirements. PDC's contention that the claims do not satisfy the further, unstated requirement – that any such products must be sold after the Closing Dates – is not persuasive. See R/S Associates v. New York Job Development Authority, 98 N.Y. 2d 29, 32 (2002) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.").[2]

Here, the designation that product liability claims, as described in Section 1.3, shall be assumed by PDC is clear and unambiguous. Accordingly, PDC's claims that Conopco retained liability for and is required to indemnify PDC from the asbestos suits at issue will be dismissed.

**Expiration of Indemnity**

In addition, Conopco asserts that Section 8.2 of the Asset Purchase Agreement dictates that any right to indemnification on behalf of PDC expired 5 years after the Closing Date – in 1998. Indeed, Section 8.2(c) provides:

> [T]he Seller shall not be responsible for indemnifying any member of the Buyer . . . from and against any Damages . . . unless the claim relating to such Damages is asserted by the Buyer within 5 years from the Closing Date[.]

---

[2] The parties agree that their Agreement is governed by New York law.

Under the plain language of Section 8.2(c), PDC's rights to indemnification under the Asset Purchase Agreement expired in 1998. PDC did not seek indemnity for the asbestos claims prior to that expiration.

PDC responds that the imposition of the five-year limitation on indemnification is *per se* unreasonable, namely because the asbestos claims at issue "simply did not exist" until 2015. Accordingly, PDC contends that enforcement of the 5-year limitations period would make a timely lawsuit for indemnification impossible.

PDC cites to two cases for support, Executive Plaza, LLC v. Peerless Ins. Co, 22 N.Y.3d 511 (2014) and Certainteed Corp. v. Celotex Corp., 2005 WL 217032 (Del. Ch. Jan. 24, 2005), where the parties by agreement diminished the normally applicable statute of limitations at issue (Executive Plaza) and measured the timeliness of claims by the statute of limitations normally applicable to such claims (Certainteed). Conopco points out that, here, the Asset Purchase Agreement does not shorten the statutory limitations period; it merely prescribes the time during which PDC had indemnity rights pursuant to the Asset Purchase Agreement. Accordingly, there is no comparable unreasonableness as was found in Executive Plaza. See Executive Plaza, 22 N.Y.3d at 518 ("It is neither fair nor reasonable to require a suit within two years from the date of the loss, while imposing a condition precedent to the suit—in this case, completion of replacement of the property—that cannot be met within that two-year period."). Nor does the instant Agreement provide for the timeliness of any claim to be measured by normally applicable statute of limitations, as in Certainteed. See Certainteed, 2005 WL 217032, at *5 (finding the agreement at issue there made clear that claims for indemnification survived subject to the normally applicable statute of limitations). Rather, the instant Agreement provides that Conopco shall not be responsible for

indemnifying PDC against damages unless the claim was asserted within 5 years of the Closing Date, or 1998.

Moreover, all limitations periods placed on contractual rights to indemnification render such actions impossible once the period has expired; this is the explicit purpose of a limitations period. Absent extenuating circumstances, which have not been demonstrated here, a party to a contract may not void an agreed upon limitations period merely because it would decrease its own liability. It should have been clear to PDC that claims arising in 2015 fall outside the indemnification window that closed 5 years after 1993 Closing Date.

**December 2015 Letter**

On December 21, 2015, Conopco agreed by letter to PDC's counsel to defend and indemnify PDC in the New York State asbestos litigation case of *Friedman v. ABC Supply Co, Inc., et al*. PDC alleges that the letter constitutes Conopco's agreement to indemnify and defend PDC not only in the *Friedman* case but also in all other equivalent asbestos litigation. In the alternative, PDC asserts that the December 2015 letter constitutes an enforceable amendment to the Asset Purchase Agreement.

Conopco argues that the December 2015 letter was nothing more than a response to PDC's request for defense and indemnity in the *Friedman* case and cannot reasonably be interpreted as an agreement to provide indemnity in any case other than *Friedman*.[3] The Court agrees.

---

[3] Conopco does not concede that it is contractually obligated to continue indemnifying PDC in *Friedman* but is not now seeking on this motion to challenge the sufficiency of the allegations related to the claim for indemnity in *Friedman* based on the December 2015 letter.

Indeed, the subject line of the letter is "*Friedman v. ABC Supply Co., Inc., et al.*" and the body of the letter provides:

> We are in receipt of your colleague Matthew Wagner's letter dated October 23, 2015, requesting that Conopco, Inc. . . . indemnify Parfums de Couer, Ltd. ("PDC") in the above-referenced matter pursuant to the August 18, 1993 Asset Purchase Agreement . . .
>
> [Conopco] agrees to defend and indemnify PDC pursuant to the terms of the Asset Purchase Agreement.

In short, upon PDC's request, Conopco agreed to defend and indemnify PDC in the *Freidman* case. PDC's contention that such agreement implicitly extends to all existing and future product liability cases is not persuasive.

> Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view. This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.

Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989). See also Tafolla v. Aldrich Management Co., LLC, 26 N.Y.S.3d 194, 196 (2016) ("The promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and surrounding circumstances."); Manley v. Ambase Corp., 337 F.3d 237, 245 (2003) ("[A] a court cannot find a duty to indemnify absent manifestation of an unmistakable intention to indemnify."). In the instant case, there is no manifestation of an unmistakable intention to indemnify beyond the *Friedman* case. The December 2015 letter does not constitute an amendment to the Asset Purchase Agreement. Accordingly, Conopco's motion to dismiss PDC's global indemnification claims will be granted.

## CONCLUSION

For the foregoing reasons, Conopco's motion to dismiss is GRANTED. Pursuant to the Asset Purchase Agreement, PDC assumed liability for the asbestos claims at issue, and Conopco has no duty to defend and indemnify PDC for those suits. PDC is instructed to file an amended complaint by February 14, 2019, including only its surviving claims.

Dated this 31st day of January, 2019, at Bridgeport, Connecticut.

      /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE